UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **VIRGINIA H. HOWARD,** | \* |
| 5506 13th Street, N.W. | \* |
| Washington, D.C.  20011 | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \*   C.A. No.: 1:14-000-cv- |
| **BOARD OF TRUSTEES OF THE** | \* |
| **UNIVERSITY OF THE DISTRICT** | \* |
| **OF COLUMBIA,** | \* |
| 4200 Connecticut Avenue, N.W., Bldg. 39 | \* |
| Washington, D.C.  20008 | \* |
| | \* |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT - CIVIL RIGHTS

### (JURY TRIAL DEMANDED)

### I.  JURISDICTION AND VENUE

1.     This is an action for declaratory relief, injunctive relief, back pay, compensatory damages and other appropriate relief, legal and equitable, brought by Plaintiff Virginia H. Howard to redress violations by the Defendant of Plaintiff's civil rights.  The jurisdiction of this Court is invoked to secure the protection of and to redress the deprivation of rights secured to Plaintiff by the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, (Supp. II. 1991) (hereinafter, "Title VII"), which provides for injunctive, equitable and other relief against discrimination in employment on the basis of race, religion, sex, national origin and color, and forbids retaliation against any person who exercises his or her rights under Title VII.  This Complaint also states a cause of action under the Age Discrimination Act of 1967, as amended, 29 U.S.C. § 633.  This

Complaint also states a cause of action under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., and the District of Columbia Human Rights Act, D.C. Code §§ 2-1431.01, *et seq.*, because Defendant failed and refused to accommodate Plaintiff Howard's disabilities.  The jurisdiction of this Court is also invoked under 28 U.S.C. §§ 1331, this being a suit authorized and instituted pursuant to the Civil Rights Act of 1964.

2. This proceeding is instituted in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, as the judicial district in which the cause of action arose and in which the Defendant, an agency of the District of Columbia government, is located and doing business.

3. This is a civil action, and the amount in controversy exceeds $100,000, exclusive of costs.

## II.  PARTIES

4. Plaintiff Virginia H. Howard is a Black female citizen of the United States who was employed by the Defendant University of the District of Columbia for 41 years.

5. Defendant Board of Trustees of the University of the District of Columbia is the governing body of the University of the District of Columbia, which is an agency of the District of Columbia government.

## III.  STATEMENT OF FACTS

6. Plaintiff Virginia H. Howard began employment with Defendant University of the District of Columbia ("UDC") in 1962 as an instructor.

7. Plaintiff distinguished herself as a tenured member of the faculty of the University of the District of Columbia for more than 40 years, teaching primarily education and liberal arts courses.

8. In addition to her duties on the UDC faculty, Dr. Howard also served a term of five years on the UDC Board of Trustees as an alumni member.

9. In addition to teaching a full-time course load, Dr. Howard also served many years as the faculty advisor to the UDC Student National Education Association

10. Despite her many years of distinguished service, beginning in approximately the Spring Semester of 2010, Defendant UDC began to subject Plaintiff Howard to a series of discriminatory acts.

10. In approximately April 2010, Dr. Howard was removed as faculty advisor to the UDC chapter of the Student National Education Association ("SNEA") without notice to either Dr. Howard or the members of the SNEA.

11. During that same period of April 2010, the annual SNEA trip to the International Reading Association conference in Chicago was drastically changed and cut back, again without any prior notice to Dr. Howard or the student members of the SNEA.

12. The trip to Chicago for the International Reading Association conference had originally been planned as a bus trip, in order that the students could visit Central State University and the University of Pittsburgh.

13. Central State University is in Ohio, and like the UDC, is an historically Black college ("HBCU").

14. Central State University has a very well-known education department, and has historically supplied a disproportionate number of Black teachers.

15. The University of Pittsburgh is a very highly-regarded academic institution which has won critical acclaim for the role its students play in the Pittsburgh community.

16.     In May 2011, Dr. Howard was denied a contract for the 2011-2012 academic year, an act which was in direct violation of the UDC By-laws and of the collective bargaining agreement between the UDC Faculty Association and the UDC.

17.     Dr. Howard was not given a new contract to teach until one week before the opening of the 2011-2012 academic year, which hampered Dr. Howard's ability to prepare for her teaching duties, and which also caused her emotional distress.

18.     In 2010-2011, Dr. Howard was accused of having mismanaged funds from the SNEA bank account; the allegation was totally frivolous and was contrived to make Dr. Howard look bad.

19.     In 2011 and 2012, Dr. Howard was assigned to teach classes up to 8:30 in the evening, even though her supervisors knew that Dr. Howard has night blindness and is partially blind in one eye, and was dependent upon public transportation because of her visual impairment.

20.     In 2012, Dr. Howard was required to give up her office to a junior faculty member, even though the policy at the UDC is that faculty offices are awarded on the basis of seniority, and at the time, Dr. Howard was the most senior member of the faculty in her department.

21.     As a result of UDC's unprecedented action, Dr. Howard was deprived of a private office, and was required to share an office with a junior faculty member.

22.     In both 2011 and 2012, Dr. Howard requested an accommodation be made for her visual impairment by requesting a glare-reduction screen for her office computer.

23.     Despite the fact that her supervisors and department heads knew that Dr. Howard was visually impaired, they initially refused to provide Dr. Howard with the

glare-reduction screen for her computer.

24. Dr. Howard had to complain to her faculty association president, Dr. Mohamed El-Khawas before the UDC would accommodate her visual disability.

25. Several of Dr. Howard's supervisors at the UDC, including Dr. Rachel Petty, and Dr. Lena Walton, made remarks about Dr. Howard being over 75 years old, and suggested that she should retire.

26. When Dr. Howard did not retire in 2013, UDC initiated actions to terminate Dr. Howard for gross misconduct in carrying out her faculty duties.

27. Dr. Howard was suspended from teaching and was not offered a faculty contract for the 2013-2014 academic year, pending the outcome of a hearing into the gross misconduct allegations.

28. UDC's allegations of gross professional misconduct caused Dr. Howard such emotional distress that she retired in September 2013, no longer able to withstand the UDC's discriminatory actions, and its unwarranted assaults on her character and professional competence.

29. In 2010, Dr. Howard filed an internal EEO complaint against her department heads at UDC, alleging that the UDC was carrying out a campaign of discrimination designed to eliminate all senior Black faculty at the UDC, and to replace them with younger, white faculty.

30. In August 2011, Dr. Howard filed a complaint with the U.S. Equal Employment Opportunity Commission alleging employment discrimination and retaliation constantly and continuously with respect to her age, race, and disability.

31. In September 2013, Dr. Howard amended her charge of discrimination

with the EEOC to include an additional charge of harassment when UDC officials interfered with her teaching and grading, and alleging that once again her re-appointment was held up because of her age, race, and disability.

32. On July 25, 2014, Plaintiff Howard received a right-to-sue letter from the EEOC, and all administrative exhaustion requirements to this lawsuit have been satisfied.

## IV. STATEMENT OF CLAIM

### A. FIRST CAUSE OF ACTION—DISCRIMINATION AND RETALIATION

33. Plaintiff Virginia H. Howard alleges and re-alleges Paragraphs 4 through 32, with the same force and effect as if set forth separately and at length herein.

34. The effect of Defendants' acts and practices as enumerated herein has been to deprive Plaintiff of rights secured to Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., to be free from discrimination, because Defendants, solely because of Plaintiff's race and protected activity, have deprived Plaintiff of equal opportunity in the terms and conditions of Plaintiff's employment. By said acts, Defendants have violated Title VII of the Civil Rights Act of 1964, as amended.

### B. SECOND CAUSE OF ACTION—AGE DISCRIMINATION

35.. Plaintiff Virginia H. Howard alleges and re-alleges Paragraphs 4 through 32, with the same force and effect as if set forth separately and at length herein.

36.. Plaintiff Virginia H. Howard alleges that, solely because of Plaintiff's age, Defendant University of the District of Columbia has engaged in a pattern of discriminatory conduct in violation of rights secured to Plaintiff by the Age Discrimination Act of 1967, as amended, 29 U.S.C. § 633, et seq., by harassing Plaintiff,

and by proposing to terminate Plaintiff Howard without just cause, and under circumstances which stigmatized Dr. Howard's professional reputation

        C.       THIRD CAUSE OF ACTION—DISABILITY DISCRIMINATION

37. Plaintiff Virginia H. Howard alleges and re-alleges Paragraphs 4 through 32, with the same force and effect as if set forth separately and at length herein.

38. Defendant UDC deliberately refused to accommodate Plaintiff Howard's disabilities, by refusing to honor her requests for a computer glare-reduction screen, and by assigning Plaintiff Howard to teach classes late at night, when it was known that Plaintiff had night blindness and visual impairments which made Plaintiff Howard dependent upon public transportation.

39. By said acts, Defendant violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., and the District of Columbia Human Rights Act, D.C. Code §§ 2-1431.01, *et seq.*, both statutes making it illegal to discriminate against a person because of their disabilities.

40. As a direct and proximate result of Defendant UDC's conduct, Plaintiff Virginia H. Howard's career and professional reputation have been severely damaged, Plaintiff has suffered mental anguish, and has lost personal and professional esteem, and Plaintiff has incurred additional financial losses, including legal fees and costs.

41. Plaintiff Howard has no plain, adequate or complete remedy at law to redress the acts and practices complained of herein, and Plaintiff is now suffering and will continue to suffer irreparable injury as a result of Defendant's acts and conduct as described herein. Unless Defendant is restrained by Order of this Court, Plaintiff will continue to suffer said irreparable injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays this Honorable Court to advance this case on the docket, Order a jury trial, cause a hearing in this case to be in every way expedited, and upon such hearing to:

1. Issue a declaratory judgment that Defendants' acts and practices complained of herein violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and the Age Discrimination Act of 1967. 29 U.S.C. § 633, as amended; and the the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., and the District of Columbia Human Rights Act, D.C. Code §§ 2-1431.01, *et seq.*

2. Order Defendant to make Plaintiff whole for the discrimination and retaliation Plaintiff has suffered as a result of the acts and practices as described herein, and provide appropriate back pay, wages, and benefits in an amount to be shown at trial;

3. Grant Plaintiff an award of compensatory damages for each of Plaintiff's Claims herein to compensate Plaintiff for the humiliation, emotional distress and loss of personal and professional esteem suffered by Plaintiff as a result of Defendants' intentional acts;

4. Grant Plaintiff's attorney's fees, costs and the disbursements necessary for Plaintiff to maintain this action.

5. Retain jurisdiction over this action to assure full compliance with the Orders of this Court and with applicable law, and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance.

6. Grant such other and further relief as the Court deems necessary and proper.

                                          Respectfully submitted,

                                          _____/s/_____  
                                          John W. Davis, DCB# 931600  
                                          1629 K Street, N.W.  
                                          Suite 300  
                                          Washington, D.C.  20006  
                                          (202) 408-1952  
                                          (202) 403-3495, Facsimile  
                                          jwdalaw@aol.com  
                                          Attorney for Plaintiff